**Warren Nathan BOYD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–88–321 CR.**

Court of Appeals of Texas,
Beaumont.

June 14, 1989.

Discretionary Review Refused
Oct. 4, 1989.

Dennis Powell, Orange, for appellant.

David P. Bosserman, Orange, for the State.

## OPINION

BROOKSHIRE, Justice.

By indictment the Appellant was charged with an aggravated sexual assault. He pleaded "not guilty." In a juried proceeding the triers of fact found the Appellant guilty of aggravated sexual assault. Appellant Boyd opted for the trial judge to assess punishment. The trial judge sentenced the Appellant to twelve years in the Texas Department of Corrections.

■ The Appellant bases his appeal on ten separate points of error. The first is that the trial court erred in overruling the Appellant's objections to the final argument of the prosecutor. Appellant argues that *the prosecutor's orations were outside of the record.* One version of the evidence was that the Appellant and the co-defendant rather brutally sexually attacked the Complainant after she was picked up by the two men when the Complainant's car broke down. Later, on a wooded road two bystanders saw suspicious activity and called the Sheriff's Department. The bystanders did not know any of the antagonists or the victim. The bystanders had observed the victim being dragged down a dirt road. A shirt had been draped over her head like a hood. The Complainant-victim was crying something like: "Please, don't; please, don't".

The law enforcement personnel quickly arrived at the scene. They found the victim with the shirt still over her face. The victim was being held by a co-defendant; the co-defendant was hiding in some brush or some tall bushes. The Appellant had apparently remained with the automobile involved in the episode in an effort to mislead the peace officers away from the immediate area of the assaults.

A nurse testified to noticeable red marks around the victim's throat. The victim's own testimony narrated how a leather shoestring had been positioned around her neck in the automobile. She said she was choked. She said that a shirt was placed over her face. She stated she feared for her life. At the threshold the Complainant admitted that she herself was on probation at the time of the trial for the burglary of a habitation. Her probation period was ten years. She had also been convicted of a Class C theft. She further explained that on the date in question her car broke down and she was picked up by two men. She characterized them as being calm. She stated: "We smoked a joint." She also stated that she had one beer but she didn't finish drinking all of the one beer. She

stated definitely that she was not intoxicated.

She affirmed that she knew that a term and condition of her probation was that she was not to smoke marihuana and she realized that the smoking of the one joint of marihuana was a definite violation of the terms and conditions of her probation. She acknowledged that another term or condition of her probation was that she was "to stay away from alcohol." The men promised to take her to St. Elizabeth Hospital where the victim's boy friend apparently was a patient. However, they started speeding in the opposite direction down the highway headed toward Mauriceville on Highway 12.

While speeding toward Mauriceville the victim definitely stated that a leather shoe-string or lace from a man's work boot went around the victim's neck. It was placed around her neck by the man seated in the back seat. The Appellant was the driver of the car. Shortly thereafter, she was told to get in the back seat. At that time a white T-shirt was placed over her face. The victim swore that after she was in the back seat that the man driving began fumbling between her legs with his hand. The car was a small one. The man in the back seat began fumbling with the Complainant's breasts. She then swore that the heavy leather boot shoestring was put around her neck. She was in fear for her life. She stated that she thought she very well might be killed. She stated she was definitely kidnapped and she thought that she would be seriously injured. The car swerved off Highway 12 and went onto a very bumpy road. The victim testified that the driver kept saying "We're going to get caught here, we're going to get caught here." She further testified that the man in the back seat—not the Appellant before us—said: "Oh, no, we're not; no, we're not; just keep going down this road."

She said she was yanked out of the car. She was also pushed. All she could see were rocks, but she heard water dripping off and she said to herself: "Oh, no, they're going to kill me and they're going to throw me in the water." The victim said that the antagonists took her half a mile from the car and then they laid her down in the grass, and they commenced taking her clothes off. The victim swore that while she was being taken from the car she pleaded: "Please don't hurt me; just, please, don't hurt me." When the three arrived at a wooded area surrounded by many kinds of bushes, the men finished taking the clothes off of the victim and then the victim said the Appellant got on top of her and started sexually assaulting her. She definitely swore the first sexual assault against her was committed by the Appellant/Defendant. The victim testified that the Appellant completed the act of sexual intercourse with her. Then she stated that the other man, described as a frizzy-haired guy, got on top of her and started having sex with her. Later the second male made the victim get on her hands and knees and the second male proceeded with further sexual intercourse. After the sexual assaults were over, the antagonists took the victim back to the car and offered her more beer and a tobacco cigarette.

Against this background of evidence the defense counsel argued that the victim knew that she had been put on probation in 1986 for ten years for the burglary of a habitation and she knew that she was going to be brought before a certain district judge who was described as a tough man, and she knew that she had violated the rules of her probation and that she would be sent to prison, probably for a number of years. The argument was then made by defense counsel that when the victim realized that she was going to be sent to prison for ten years her mind quickly reacted and came up with the solution of "yelling rape" so that she would not be a probationer caught out partying. The defense argument was that she fabricated the rape story to place herself in the position of being a victim.

■ We conclude that the prosecutor's remarks were in answer to the defense counsel's closing argument. The prosecutor stated that the defense counsel knew that it was rare on a motion to revoke

probation for the smoking of a marihuana joint or the drinking of a beer that a probationer would be sent off to the Texas Department of Corrections for ten years. The prosecutor further argued that the trial judge had a lot of discretion in hearing and deciding motions to revoke probation. He did comment to the jury that the trial judge would have the right to amend the probation by changing the terms and conditions of the probation. See *Franklin v. State*, 693 S.W.2d 420 (Tex.Crim.App.1985). The State's argument was made in reply to the orations of defense counsel. There was no error; there was certainly no reversible error. *Scott v. State*, 340 S.W.2d 52 (Tex. Crim.App.1960). Because of the overwhelming evidence in this case, we decide that if the State's argument was improper, then it was harmless because of the high valuational characteristics of the evidence of guilt in this case against the Appellant Boyd. See *Garrett v. State*, 632 S.W.2d 350 (Tex.Crim.App.1982).

■ Point of error two states that the trial court erred in overruling the Appellant's motion to suppress confession. Although confusing at one point, the record shows that the Appellant was read his *Miranda* rights, once by an Officer Barnes and once by Officer LaChance. Officer LaChance then refreshed his memory as to which of the two defendants he had read the *Miranda* rights to by reviewing a *Miranda* card signed by him as well as the Appellant.

This *Miranda* card was entered into evidence as State's Exhibit 4. State's Exhibit 4 reads: "I acknowledge that I have been given my *Miranda* (Art. 38.22 CCP) warnings." It was signed "Nathan Boyd" and dated 06/11/88 at 6:20 p.m. with the place noted as being Cow Bayou, about 1000 feet south of Highway 12, and given by Officer LaChance. The written statement of the Appellant itself contained the appropriate warnings. The oral confession was not introduced until the rebuttal stage of the trial after the Appellant himself had taken the stand and testified to an altogether different narrative of the events.

The Appellant was called as a witness in his own behalf. He testified that he was on probation in Newton County for burglary. His testimony can be summarized as follows: he and his friend Steven Leger left Old Salem and drove to the beer store at Vidor. Steve Leger bought a six-pack of Busch beer. They were hailed down and stopped by the Complainant. She hollered that she needed a ride. They took her to her mother's house to leave a note. The Appellant said when the Complainant first got in the car she seemed to want to party. The Complainant first asked if the two men smoked and the victim fired up the joint of marihuana and the three smoked it. The Appellant testified that the victim drank one beer on the way to her mother's apartment and then she drank another beer riding down Highway 12. The Appellant further swore that while they were in front of the apartment of the victim's mother, the victim told the men to wait. She left her purse on the floorboard and she handed Steve Leger, the co-defendant, some weed and told him to roll up some joints. When the victim came back, according to the Appellant, she got in the car and said something like: "Are y'all ready to party?"

Later, the Appellant stated that the victim drank three beers during the course of the afternoon. Appellant testified that while driving down Highway 12 the victim asked the men if they fooled around. She also in some manner raised her shirt up so that the men could see her breasts, according to the Appellant. Appellant, during his testimony, admitted that he rubbed sensuously on the victim but that she also rubbed him back. The Appellant said: "She said she would take both of us on if we didn't hurt her and the way she—Why [sic] I said that is because the way she meant hurt her is to put it in her mouth or in her rear and I told her I wasn't that kind of person anyway." The Appellant's version is that the victim brought on, provoked and enticed the men and caused the resulting sexual intercourses. Appellant testified:

"Q Was she complaining or fighting against you?

"A No, sir, she wasn't.

"Q Did she appear to be enjoying it?

"A Yes, sir, she was.

"Q Why do you think that?

"A Well, she was rubbing on my back and on my behind and pulling me closer to her."

It was only after this testimony from Appellant that, as rebuttal testimony, the partial oral admission was admitted into evidence as impeachment. However, when the partial oral confession was asked about, Appellant denied it and there was no objection made at the time. Immediately thereafter the State concluded the cross-examination of the Appellant. The defense lawyer had no further questions.

The written statement of the defendant is virtually entirely exculpatory. It was not admitted into evidence until after the Appellant took the stand and recited in his testimony a narrative which was inconsistent to the one that he had previously given to an officer. The Appellant made no objection at the trial to the admission of his written statement. We conclude that the Appellant's oral and written statements were admissible at the trial for the purposes of impeachment. See *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *Huffman v. State*, 746 S.W.2d 212 (Tex.Crim.App.1988); *Garrett v. State*, 682 S.W.2d 301 (Tex.Crim.App.1984). We overrule point of error two.

■ Point of error three is that the trial court erred in refusing to submit the Appellant's requested jury instruction limiting the use of the Appellant's prior inconsistent statement. On the stand the Appellant testified that the victim had put the shirt voluntarily over her own head. The State offered the Appellant's written statement which was the State's Exhibit No. 16 as a prior inconsistent statement. In the written statement Appellant stated that Steve Leger put the shirt over the victim's head.

We think that Boyd's voluntary statement, being State's Exhibit No. 16, was admissible. It was certainly admissible for impeachment purposes. This statement was also very favorable to the Appellant. In summary, in the statement he stated that as they drove across the tracks a girl yelled at them and said she needed a ride. She got into the car on the passenger side in the front seat. He described her clothing. He said she needed to go to her mother's house to leave her mother a note as to where the victim left her own child, being a five year old. Boyd said that the victim said that after they went to the apartment that we can all go party. He stated that they smoked a joint that she lit. Boyd did not know where the marihuana came from. Boyd further said that the victim stated that if you don't hurt me, I'll ____ both of you. In the statement Boyd said that she walked down the road about a hundred feet and she took off her pants and panties and that the victim laid down on the grass and spread her legs. Boyd said that the victim said several times that "we can ____ just don't hurt me."

The Appellant requested the following jury charge:

"You are instructed that when a witness testifies at trial, it is permissible to introduce into evidence previous statements made by the witness which differ from the statement made at trial. This evidence is admitted for the sole purpose of aiding you, if it does, in judging the witness's credibility and assessing the weight to give his testimony. This is the sole purpose for the admission of this evidence, and it cannot be used by you as any evidence of the defendant's guilt in this case, or for any purpose other than that for which it is admitted. Therefore, you are further instructed that if you find that any evidence was offered which shows that the Defendant gave a previous statement which differed from that statement offered at trial, you shall consider such evidence for the sole purpose of aiding you, if it does, in judging the Defendant's credibility and assessing the weight to be given his testimony; and you shall not consider such evidence to be any indication of the defendant's guilt in this case or consider it for any other purpose than that for which it was admitted."

*TEX.CODE CRIM.PROC.ANN. art. 38.-22, sec. 5* (Vernon 1979) provides:

"Nothing in this article precludes the admission of a statement made by the accused . . . or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness. . . ."

Hence, Article 38.22, section 5, clearly makes admissible a statement of the Appellant for purposes of impeachment. We simply perceive no harm. Appellant's statement, we think, was beneficial and helpful to him. We view the entire record and conclude that the evidence against the Appellant was overwhelming in its nature. Article 38.22, section 5, by its own terms, makes invalid point of error number three. We overrule it.

■ Point of error four advances the contention that error was committed in refusing to submit the Appellant's requested jury instruction explaining the purpose of admitting the prior convictions of the complaining witness. The Appellant submitted and requested the following jury charge concerning the victim:

"You are instructed that during the course of the trial, evidence has been admitted that J____ P____ [our deletion] has previously been convicted of offenses. The evidence was admitted for the sole purpose of aiding you, if it does, in judging J____ P____'s credibility and assessing the weight to give her testimony. This is the sole purpose for the admission of this evidence, and it cannot be used by you for any purpose other than that for which it was admitted."

The trial court refused this requested charge. The Appellant cites no authority to support his contention of harmful error. The Complainant is not on trial and the jury, under the charge, if it wished, could consider the victim or the victim's probation for burglary of a habitation for purposes other than merely judging her credibility and assessing the weight that should be given her testimony. We do not perceive how the Appellant was harmed or how the Appellant can effectively complain. Indeed, this lack of the jury charge would allow the jury to consider the victim's probation as grounds to find for the Appellant as well as a grounds for judging the Complainant's credibility. Four is overruled.

■ Error five complains that the court committed error in denying the Appellant's motion for a mistrial. As stated above, when the victim was picked up by the Appellant and the other antagonist, the victim was first taken to her mother's apartment to leave a note. That note was not admitted into evidence during the trial. During final arguments Appellant's counsel asked a rhetorical question. The rhetorical question was: "Wouldn't you like to know what the note said?" Then the defense counsel attempted to answer the question as follows: "Dear Mom, I'm going to the hospital with a couple of guys," or "Dear Mom, I'm going riding around with a couple of guys," or "Dear Mom, I'm going to have a joint and drink some beer with a couple of guys." "Wouldn't you like to see that note?" Then in the record we find that an unidentified woman in the court called out: "I got it."

"MR. POWELL: Your Honor, I object and request that—

"THE COURT: I will instruct the people in the audience to remain silent during the argument of counsel. *I further instruct the jury to disregard any comments by any member of the audience.*

"MR. POWELL: Your Honor, in order to preserve error, I move for a mistrial.

"THE COURT: That's denied." (Emphasis added.)

The absence of the note, we conclude, was a minor matter in this record. Any error that might have been caused by the spectator's outburst was immediately cured by the court's unequivocal and dogmatic instruction to the jury. Inappropriate comments by members of the audience do not result in error and certainly do not result in reversible error unless and until the Appellant shows a reasonable probability that such outbursts affected or interfered with the jury's verdict. *Landry v. State*, 706 S.W.2d 105 (Tex.Crim.App.1985); *Ashley v. State*, 362 S.W.2d 847 (Tex.Crim.App.1962). Point of error five is overruled.

■ Point of error six argues that the trial court erred in refusing to allow the Appellant to make a bill to preserve his alleged error at a suppression hearing. At a motion to suppress identification, the victim testified that she looked into the faces of the two antagonists while she was riding toward her mom's apartment and she looked directly in their faces for about three or four minutes each. She stated that she passed the joint of marihuana to the person in the back seat three times and she looked at him each time she passed the joint. As to the driver, she passed the marihuana joint to him twice and she looked at him twice in his face.

The next opportunity she had to see their faces were when the police officers arrived at the scene of the crime and took the shirt off of the victim's face. She also saw her two antagonists for about two or three minutes after the three left the victim's mother's apartment while they were traveling on Highway 12. The victim stated she had been presented with a photo line-up. The victim had no trouble picking out the two men whose pictures were shown her in the photo line-up along with other pictures. These several pictures were State's Exhibit 3 and 4 at the hearing. The victim further stated that she immediately focused on each of the two individuals and she was completely certain of her identification of them. Furthermore, the investigator did not in any way indicate to the victim who the defendants or assailants were. *There was nothing suggestive about the photo line-up.* The court at the hearing found that the victim clearly and quickly identified the two defendants. This was an identification hearing only and the court properly restricted and limited the hearing for that purpose. At the end of the hearing, the counsel for the Appellant asked that the person on the stand, being the victim, remain for the purpose of making a bill regarding her criminal record. Then the defense rested on all the motions. The court denied the motion to suppress identification and the motion to suppress the confession. The Appellant cites no decisional authority for his contention. We determine that there was no abuse of dis-

cretion on the part of the trial judge. See *Dill v. State*, 697 S.W.2d 702 (Tex.App.— Corpus Christi 1985, pet. ref'd). Furthermore, generally the issue of whether to hold a pre-trial hearing on a motion to suppress, such as this one, is within the sound discretion of the trial court. *Calloway v. State*, 743 S.W.2d 645 (Tex.Crim. App.1988). We overrule point of error six; Appellant has failed to show harm.

■ Point of error seven avers that the court erred in the submission of the instructions to the jury on conspiracy. We have carefully reviewed the court's charge that is complained of by the Appellant. Appellant's objection was that there was no evidence in the case of any conspiracy to commit a felony, or, in the alternative, that there was no evidence that any felony was committed in the course of a conspiracy to carry out another felony. The Appellant further objected that the court's charge would only confuse and mislead the jurors. Lastly, the Appellant objected that there was no language in the charge of the court applying law of conspiracy to the facts of the case, and that the jury was only charged in a general way on the law of conspiracy. The court's charge contained the following instruction:

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another which he is criminally responsible, or by both.

"A person is criminally responsible for an offense committed by the conduct of another if: acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

"If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

"Mere presence alone will not constitute one a party to an offense."

We find that the conspiracy language and the instruction are substantially correct. See 8 M. McCormick, TEXAS CRIMINAL FORMS AND TRIAL MANUAL, sec. 84.01 (Texas Practice 1985). We think the conspiracy language and the conspiracy instruction were correctly applicable to the record in this case.

The record clearly shows that the Appellant made a definite motion to the co-defendant in the back seat and immediately thereafter the co-defendant, Steve Leger, placed the heavy leather boot lace around the victim's neck. As the Appellant and the co-defendant were driving down a certain road, they talked about being apprehended and getting caught. There is evidence that both of the antagonists participated in disrobing the victim, and in walking the victim away from the small car to a remote spote in a wooded area surrounded by bushes. Both defendants had sex with the victim. It may have been that the original intention of the antagonists was to have committed an assault or a sexual assault or perhaps kidnapping. The eventualities were that aggravated sexual assaults were committed. We find that the law of the parties charge was properly applied to the facts in the jury charge. The conspiracy language in the conspiracy instruction is not required to be applied to the facts under this record. The Appellant does not cite any decisional authority to support his contention. We overrule seven.

 Point of error eight advances the contention that the court below erred in submitting to the jury the instruction that the jury could find the Appellant guilty of acting alone. The court's charge contained this:

"Now bearing in mind the following instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, WARREN NATHAN BOYD, either acting alone or with another as a party to the offense as that term is herein before defined, on or about the 11th day of June, 1988, in the County of Orange, and State of Texas, as alleged in the indictment did then and there intentionally or knowingly, by threatening to use force or violence against J___ L___, and of which said threats J___ L___ believed WARREN NATHAN BOYD had the present ability to execute, cause the penetration of the female sexual organ with his penis, without the consent of J___ L___, and WARREN NATHAN BOYD did then and there by acts and words place J___ L___ in fear that death, serious bodily injury or kidnapping would be imminently inflicted on said J___ L___, you will find the defendant guilty of the offense of Aggravated Sexual Assault and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

The jury found the Appellant guilty of aggravated sexual assault and the record clearly sustains that verdict with the Appellant acting as a party. According to the victim, the Appellant in this appeal was the antagonist that motioned to Leger in the back seat for Leger to apply the leather boot strap or leather shoestring around the victim's neck. The victim unequivocally testified that she was in fear for her life when the heavy leather boot strap was put around her neck. She actually thought that she might be killed. She again stated that she was kidnapped. She further testified that the antagonists against her had the ability to seriously injure her and to kill her. When she started her forced trek away from the car, the two men took her about half a mile from the car. The Appellant yanked her out of the car and she was treated very roughly by the Appellant when he jerked her out of the car. The court's charge on the Appellant acting alone was probably not correct. However, we decide any such error was harmless. See *Watson v. State*, 693 S.W.2d 938 (Tex. Crim.App.1985). We find that no harm was visited upon the Appellant as a result of the charge given. We make this finding beyond a reasonable doubt. We have carefully reviewed the record and it is not conceivable to us how the jury in this case

could have been mislead by the court's charge. We overrule point of error eight.

 Point of error nine disapproves of the trial court allowing the State to reopen. The State reopened when the victim clarified that she also went by a name other than the name that was spelled out in the indictment. The name the State alleged in the indictment was J____ L.____. The court allowed the victim to state that she also went by the name of J____ L. P.____, the name she used as she testified during the State's case-in-chief. We think that there can be no doubt that the victim involved was the same individual human being answering to two names.

*TEX.CODE CRIM.PROC.ANN. art. 36.-02* (Vernon 1981) authorizes the court to allow additional testimony to be introduced at any time before the argument of the case is concluded, if the testimony appears to be necessary to the due administration of justice. The decision to reopen a case is left to the sound discretion of the trial judge. *Wolf v. State,* 674 S.W.2d 831 (Tex. App.—Corpus Christi 1984, pet. ref'd.); see also *Cain v. State,* 666 S.W.2d 109 (Tex. Crim.App.1984). We think point nine may be disposed of simply. The indictment alleged that the Appellant committed the offense of aggravated sexual assault on J____ L.____. When the victim was on the stand she answered her name was J____ R____ P.____, but unquestionably she was the same individual human being. She stated that she was known also by the name set forth in the indictment and that people called her by the name set forth in the indictment and she answered to that name. There is no prejudice or harm shown. Point of error nine is overruled.

 The last point of error is that the court erred in refusing to submit the Appellant's requested jury instruction regarding the complaining witness's past sexual behavior. This point lacks merit. We conclude that *TEX.R.CRIM.EVID. 412* is dispositive of this contention. Rule 412 makes inadmissible the victim's past sexual behavior from being admitted before the jury or considered by the jury except under very limited enumerated situations, none of which apply here. Additionally the Appellant had certain burdens under *TEX.R. CRIM.EVID. 412(c).* He failed therein. The general past sexual behavior is inadmissible under Rule 412(a)(b)(1), (2). Therefore, we overrule point of error ten.

In summary, we overrule each and all of the Appellant's points of error. We affirm the judgment and sentence of the trial court.

AFFIRMED.