**Juan Doroteo GARCIA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–93–00139–CR.

Court of Appeals of Texas, El Paso.

Feb. 9, 1994.

Steven L. Clack, Andrews, for appellant.

Dennis Cadra, County Atty., Andrews, for state.

Before BARAJAS, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

KOEHLER, Justice.

Juan Doroteo Garcia appeals from a conviction for the offense of delivery of cocaine. Upon a finding of guilt, the jury assessed punishment at confinement in prison for a term of 10 years and a fine of $10,000. We affirm the judgment of the trial court.

In his first point of error, Appellant attacks the sufficiency of the evidence to support his conviction as a party to the offense. More specifically, he contends that there was no evidence of an affirmative act by him to assist in the commission of the offense of delivery of cocaine.

In reviewing the sufficiency of the evidence to support a criminal conviction, we must review all the evidence, both State and defense, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Jones v. State*, 833 S.W.2d 118, 122 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993). The standard of review is the same for both direct and circumstantial evidence. *Geesa v. State*, 820 S.W.2d 154, 161 (Tex. Crim.App.1991).

■ A person is criminally responsible for an offense committed by another if acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX.PENAL CODE ANN. § 7.02(a)(2) (Vernon 1974). Where the evidence shows a defendant was not the primary actor but at most, responsible for the actions of the primary actor, the State must prove or the record must show conduct constituting the offense plus an act or acts by the defendant done with intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex.Crim.App.1985).

■ In determining whether a defendant participated in an offense as a party, the court may examine the events occurring before, during, and after the commission of the offense, and may rely on the actions of the defendant which show an understanding and common design to commit the offense. *Burdine v. State*, 719 S.W.2d 309, 315 (Tex.Crim. App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). While the presence of the accused at the scene of an offense is not alone sufficient to support a conviction, it is a circumstance tending to prove guilt, which, combined with other facts, may suffice to show that the accused was a participant. *Beardsley v. State*, 738 S.W.2d 681, 685 (Tex.Crim.App.1987).

■ William Duesler, a narcotics investigator for the Andrews County Sheriff's Department, testified that on September 27, 1991, he made arrangements to trade twenty cases of beer for an "8–ball" or one-eighth ounce of cocaine.[1] He had made the arrangements by telephone with Levetta Welch, who was Duesler's "connection" to Arcadio Gonzales. That same evening, Duesler took the twenty cases of beer first to Welch's residence which was across the street from the Gonzales residence, and then to Gonzales' home. After they unloaded the beer into the living room, Gonzales said that the cocaine would be there in thirty minutes.

At almost 11 p.m., Appellant and Irma Villalobos arrived at Gonzales' residence in a Buick LeSabre and came into the house.

Duesler asked if they had the cocaine. In response, Gonzales asked Appellant if he was ready to "go get the stuff", and Appellant replied that they would go get it and be back shortly. Appellant and Gonzales left in Appellant's car, while Villalobos stayed behind with Duesler. Gonzales and Appellant returned approximately fifteen minutes later. Duesler identified Appellant as the driver of the automobile when they left and on the return trip. After they came into the house, Gonzales said that they had the "stuff" and handed Duesler a small plastic pouch which contained a white powder substance. A short while later, Duesler had a discussion with Appellant about trading automatic weapons for a larger quantity of cocaine. Appellant agreed to present the proposed deal to "his source" and gave Duesler his telephone number. Soon after Duesler left the residence, he determined by means of a field test that the white powder was cocaine. Laboratory tests revealed that the substance delivered to Duesler was 1.57 grams of cocaine.

Irma Villalobos, Appellant's wife, and Appellant both testified during the defense case-in-chief. They both testified that Gonzales had called and asked for a ride, but they did not know why or where he was going. They denied any knowledge that the drug deal was going to take place, and only Appellant actually saw Gonzales hand Duesler the baggy of cocaine. Their versions of that evening's events generally conflicted with Duesler's testimony, and they both denied any involvement or interest in drug deals.

The indictment, omitting the formalities, alleged that on or about the 27th day of September, 1991, in Andrews County, Texas:

[D]id then and there intentionally and knowingly deliver to B.E. Duesler a controlled substance, namely cocaine by aggregate weight, including adulterants and dilutants of less than twenty-eight grmas [sic] by actually transferring said controlled substance.

---

1. Andrews County is a dry county.

The jury was instructed on the law of parties. Appellant was found guilty of actual delivery of cocaine as alleged in the indictment.

Appellant argues on appeal that the evidence shows mere presence at the scene of the offense and nothing more. We disagree. Appellant arrived at the residence at the time that Gonzales had said the cocaine would arrive, albeit without the cocaine. In response to Duesler's query, Gonzales said he was ready to go get the "stuff" and that he would be back soon. The two of them left in Appellant's car with Appellant driving, and they returned shortly thereafter with the cocaine. Appellant was standing by Gonzales when he handed the cocaine to Duesler. As a further indication of his knowing participation in the offense, Appellant and Duesler discussed trading automatic weapons for a larger quantity of cocaine than what had just been delivered, and Appellant agreed to discuss it with "his source".

We find that the evidence is sufficient to support Appellant's conviction as a party to the offense of delivery of cocaine by actual transfer. *See Medellin v. State,* 617 S.W.2d 229 (Tex.Crim.App.1981); *Ramirez v. State,* 822 S.W.2d 240 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd); *Alcorta v. State,* 626 S.W.2d 838 (Tex.App.—Corpus Christi 1981, no pet.). Appellant's Point of Error No. One is overruled.

In his second point of error, Appellant asserts that the trial court improperly charged the jury on the law of parties for several reasons. He contends that the charge was improper because: (1) it contained only an abstract paragraph on the law of parties, and the law was not applied in the application paragraph; (2) the law of parties theory was not pled in the indictment; and (3) it was not raised by the evidence. Each of these contentions is without merit.

We note at the outset that Appellant did not object to the charge on any of the grounds he asserts as error on appeal. The trial court instructed the jury as follows:

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. Each party to an offense may be charged with commission of the offense.

"A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a part [sic] to an offense.

3.

"Now, if you find from the evidence beyond a reasonable doubt, that on or about the 27th day of September, 1991, in Andrews County, Texas, Arcadio Gonzales did intentionally or knowingly deliver, by actual transfer, a controlled substance, namely cocaine, in an amount of less than 28 grams, including any adulterants or dilutants to B.E. Duesler, and that the Defendant, Juan Doroteo Garcia did then and there, with the intent to promote or assist the commission of said delivery, direct, solicit, encourage, aid, or attempt to aid Arcadio Gonzales in the commission of said delivery of cocaine, then you will find the Defendant guilty, as charged in the indictment.

"Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the Defendant not guilty."

With regard to his first argument, Appellant also contends that the above charge is in error because it did not require that the jury find that the principal, Arcadio Gonzales, was guilty of the offense. Contrary to Appellant's assertions, the charge of the court not only applies the law of parties in the application paragraph, it clearly requires that the jury find that Arcadio Gonzales committed the delivery of cocaine by actual transfer, *and* that Appellant acted as a party.

■ In his second argument, Appellant asserts that the trial court erred in giving the charge because the theory was not pled in the indictment. He claims that his motion to quash on this point was overruled by the trial court. The only motion to quash contained in the record addresses the failure of the

indictment to "specify the type of delivery the Defendant allegedly made." The indictment alleges an actual transfer. Thus, his motion did not address the failure of the State to plead the law of parties in the indictment. Furthermore, it was not necessary that the State plead the law of parties in the indictment. *Montoya v. State*, 810 S.W.2d 160, 165 (Tex.Crim.App.1989), *cert. denied*, —— U.S. ——, 112 S.Ct. 426, 116 L.Ed.2d 446 (1991); *Williams v. State*, 676 S.W.2d 399, 401 (Tex.Crim.App.1984). The trial court may charge on the law of parties when raised by the evidence even if there is no such allegation in the indictment. *Montoya*, 810 S.W.2d at 165; *Williams*, 676 S.W.2d at 401.

■ Finally, we find that the law of parties charge was properly submitted because it was raised by the evidence in that there was no evidence to support a conclusion that Appellant committed the offense acting alone, and the evidence at trial certainly raised an issue that Appellant was guilty under the law of parties. Thus, the charge was raised by the evidence. *See Johnson v. State*, 739 S.W.2d 299, 305 (Tex.Crim.App. 1987); *Bratcher v. State*, 771 S.W.2d 175, 183–84 (Tex.App.—San Antonio 1989, no pet.). Point of Error No. Two is overruled.

In his third point of error, Appellant asserts that the admission of an audiotape recording of telephone conversations between Duesler, Villalobos, and Appellant, was error because it implicated Appellant in a collateral matter. He asserts that the error was compounded by the fact that the existence of the tape recording was not disclosed to him prior to trial. The tape has been included in the appellate record and we have reviewed it.

We first note that Appellant has cited no authority in support of his contentions in this point of error. Thus, this point of error has not been properly briefed. TEX.R.APP.P. 74(f). Nevertheless, we shall review his contention.

■ With regard to Appellant's argument that the State was obligated to advise him of the existence of this tape and provide him with a copy of it, the record reveals that Appellant's motion for discovery, although it had been set for hearing, had never been heard or ruled upon by the trial court. We are unable to perceive any exculpatory or mitigating value, and Appellant does not suggest otherwise. Thus, we find that the State did not have an obligation to make known the existence of the tape or make a copy for Appellant in the absence of a discovery order or a clear agreement to do so. TEX.CODE CRIM.PROC.ANN. art. 39.14 (Vernon 1979).

■ Appellant contends that he and Villalobos could not be impeached since their statements related to a collateral matter which the State had raised in its cross-examination of the witnesses. *See Flannery v. State*, 676 S.W.2d 369, 370 (Tex.Crim.App. 1984). We find that evidence of the conversations in question was first injected into trial by Appellant through his cross-examination of Duesler. Further, this testimony was not a collateral matter, but was used to advance the defensive theory that Duesler was an overzealous narcotics officer who hounded Appellant and his wife about drug deals even though they told him they were not interested. Therefore, the State was entitled to refute the defensive theory of the accused and the evidence introduced in support of it. *Flannery*, 676 S.W.2d at 370.

■ At trial, Villalobos testified that Duesler had asked her on one occasion to obtain drugs for him, but she refused and told him she was too scared of drugs. Appellant testified that Duesler called him two or three times after this incident about trading weapons for cocaine, but said that he was not interested and never gave Duesler a reason to believe that he was interested in such a deal.

In a striking contrast to the picture they painted for the jury, the tape reveals that both Appellant and Villalobos had quite amicable conversations with Duesler about a proposed drug deal. Villalobos talked to him first and said that she believed that Appellant was out checking on the drug deal that he and Duesler had talked about previously. She also discussed the terms of a proposed drug deal with Duesler which involved Appellant receiving $1,000 cash as his part for delivering "half a ki" (half a kilo of cocaine)

to Duesler. Apparently, this was a modification of a prior deal in which Appellant was going to be paid with guns. Duesler told Villalobos that he would pay $9,500 for the "ki". This conversation was obviously inconsistent with her trial testimony that she refused to obtain drugs for Duesler because she was "scared of drugs."

Duesler called Appellant sometime after he talked to Villalobos. The tape reveals that he had been told by Villalobos about the new deal previously discussed by Duesler and Villalobos ($9,500 for half a kilo). Appellant told Duesler that he had discussed the "guns for drugs" deal with someone and had tried to make the deal several ways. But, he had been told that they could not do the deal because things were "too hot" since the Midland Narcotics Office was working in Andrews. Appellant said that perhaps they could do the deal when things cooled off. Again, this was contrary to his trial testimony.

We find that the tape recording of the conversations was admissible to impeach both Appellant and his wife with their previous inconsistent statements. A witness's prior inconsistent statements are admissible to impeach a witness. *Aranda v. State*, 736 S.W.2d 702, 707 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988); *Boyd v. State*, 774 S.W.2d 37, 41 (Tex.App.—Beaumont 1989, pet. ref'd); TEX.R.CRIM.EVID. 612(a). The rule of admissibility of evidence of prior inconsistent statements should be liberally construed and the trial judge should have discretion to receive any evidence which gives promise of exposing a falsehood. *Aranda*, 736 S.W.2d at 707.

Having overruled Appellant's Points of Error Nos. One, Two, and Three, the judgment of the trial court is affirmed.