COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

                                                                              )     

ELISEO
JARAMILLO,                                         )                    No. 
08-00-00489-CR

                                                                              )

Appellant,                          )                             Appeal from

                                                                              )     

v.                                                                           )                        65th District Court

                                                                              )

THE STATE OF TEXAS,                                     )                 of El Paso County, Texas

                                                                              )

Appellee.                           )                        (TC# 970D04155)

 

O
P I N I O N

 

Eliseo Jaramillo appeals his conviction for the offense of
engaging in organized criminal activity. 
The trial court assessed punishment by confinement in the Texas
Department of Criminal Justice for ten years, probated for a period of ten
years.  Appellant argues the evidence was
insufficient as a matter of law to support his conviction.  We affirm.

FACTUAL SUMMARY








On
the evening of April 26, 1997, Tanya Cardoza was
celebrating her fifteenth birthday party, or Aquinceanera,@
at her home at 9875 Lilly in El Paso County. 
Tanya=s sister,
Myrna, organized the party and family and friends were invited.  Guests included Jessica Acosta, Tanya=s boyfriend, Ruben Martinez, and Myrna=s boyfriend, Heriberto
Hernandez.  Invited by Martinez, some ten
to twelve members of an El Paso gang known as the ANasty
Boys@ arrived
around 9 p.m.  The group entered the
front gate and walked around the side of the house to the backyard; they ate,
drank, and left the party within a half hour of arriving.  Acosta testified that the Nasty Boys were
drunk when she arrived.  

After
the Nasty Boys left, eight to ten members of ASoco Loco@
gang arrived.  Myrna greeted them at
the gate.  She hesitated to let them in
because they had not been invited, but because there was almost no one left at
the party, she relented.  

About
half an hour after leaving the party, a group of twelve to fifteen Nasty Boys
returned, including the same individuals who were in attendance earlier.  Acosta was concerned that there would be
problems between the two groups because of their rivalry.  She testified that the gang members were Astaring each other down@ and Agiving
each other bad looks.@  Tanya was initially concerned that the two
gangs would fight as soon as they saw each other, but she described them as Acalm@
and Atrying to
get along@ with
each other.  Some of the members shook
hands and introduced themselves.  The
Nasty Boys looked older and appeared to have a larger physical build than the
members of Soco Loco.








After
a while, a Soco Loco known as AHooter@ started trouble with the Nasty
Boys.  Hooter was observed Apicking a fight@
and throwing gang signs at the Nasty Boys, saying Apuro Soco Loco.@ 
The Nasty Boys remained calm at first. 
Acosta testified that the Nasty Boys were drunk and began
name-calling.  Myrna sensed trouble, turned
off the music, and warned the groups to stop or they would have to leave.  Myrna turned the music back on and Hooter
began throwing his gang signs again. 
There was one member from the Nasty Boys who told Hooter Ato cut it out@
because they were at the party Ato
have a good time.@  Myrna identified this person as
Appellant.  Appellant appeared to her to
be the leader of the Nasty Boys because he stood in front of the group.  Hernandez testified that Soco
Loco member Jake Aguirre, also known as ACasper,@ initiated an argument with Frank
Dominguez, one of the Nasty Boys.  After
Myrna turned off the music and told everyone to settle down, Dominguez and
Aguirre began arguing again.  

Finally,
Myrna ordered everyone to leave.  The
Nasty Boys followed behind Soco Loco toward the front
gate.  Tanya, Myrna, and Martinez walked
between the two groups to prevent anything from happening.  Soco Loco and the
Nasty Boys yelled at each other as they were being escorted out of the
backyard.  The members of Soco Loco began running from the yard; Myrna closed the
gate behind them and held it shut to keep the groups separated.  Myrna recalled that Soco
Loco members were Arowdy@ and Aout
to pick a fight.@  The Nasty Boys remained inside the yard
behind the fence.  Each side continued
the name-calling and threw gang signs at the other.  One of the Nasty Boys ran up to the front gate.  Another Soco Loco
did the same and both tugged at it back and forth.  While Myrna tried to hold the gate, someone
forced it open.  Myrna was punched in the
face and the Nasty Boys ran into the street. 
There were several fights going on at one time.   Myrna
saw Hooter on the ground being kicked by several people.








Acosta,
Hernandez, and Myrna observed the fight involving Aguirre.  Aguirre began  fighting with one of the Nasty
Boys.  He made an attempt to run but was
tripped and fell to the ground.  Aguirre
lay in the middle of the street with three or four Nasty Boys surrounding
him.  Acosta watched the Nasty Boys kick
Aguirre all over his body.  She could
hear the kicks and heard him stop breathing. 
Hernandez saw Juan Jasso and Dominguez
surround Aguirre and then Dominguez kicked Aguirre.  Myrna described the kicking as Abrutal@
and Amerciless.@ 
Some Nasty Boys bent over and punched Aguirre with their hands.  Aguirre did not fight back, but only tried to
cover his head.  The Nasty Boys also used
a chair, a stick or a pipe, and a brick to hit Aguirre.  The chair was like a folding lawn chair made
of metal.  Myrna saw someone strike
Aguirre=s
shoulder with a stick.  Acosta saw a
tall, skinny person take a brick and drop it on Aguirre=s
head.  The brick broke into two pieces as
it hit his head.  Myrna described the
brick as being in the shape of a half-moon, and said that it came from her
parent=s
yard.  Then one of the Nasty Boys took
one of the broken pieces and took turns with another member hitting Aguirre
with the brick multiple times.  Another
Nasty Boy yelled words of encouragement to Jasso,
telling him to continue hitting Aguirre. 
Aguirre did not move as he was struck. 


While
Acosta and Hernandez identified Jasso as the one who
dropped the brick on Aguirre=s
head, Myrna identified Appellant.  She
also identified Appellant as one of the individuals who struck Aguirre with a
broken piece of brick.  Myrna walked
toward Aguirre to try to stop the beating and came within five or six
feet.  She recalled that one of the men
had a smirk on his face while he beat Aguirre. 
When Myrna yelled at them to stop, Appellant threw a brick at her.  The brick missed her and knocked a side-view
mirror off of a car parked on the curb. 
Appellant then ran away.   

Someone
yelled that the police were coming and everyone scattered, jumped in their
cars, and sped off.  Acosta ran to
Aguirre=s
side.  He did not appear to be conscious
and was barely breathing.  Acosta
believed Aguirre had internal injuries because she heard a rattling sound she
had heard before--like someone who has fluid in their esophagus.  Acosta stood next to Aguirre so that the
fleeing cars would not run over him. 
Hernandez went into the street and picked up the brick.            Michael
Velez of the El Paso Police Department arrived on the scene at about 2
a.m.  Officer Velez discovered some gang
graffiti on the sidewalk near the house at 9875 Lilly.  The graffiti appeared to be fresh.








Dr.
Juan Contin, the chief medical examiner for El Paso
County, conducted the autopsy on Aguirre. 
He found no less than seven injuries to the head that had the
configuration of a square.  A brick,
similar to the one introduced into evidence, was capable of causing the pattern
injuries to Aguirre=s
head.  Aguirre also had multiple skull
fractures, bleeding inside the skull, and a hemorrhage on the brain.  The final cause of death was severe brain
swelling due to his injuries that resulted from blunt force trauma.

Jeffrey
Gibson, a detective with the gang task force of the El Paso County Sheriff=s Department, testified that Appellant,
Javier Quesada, Jose Benavidez, Frank Dominguez, Juan Jasso,
Richard Baca, and Carlos Escobar were all members of the Nasty Boys and that he
was familiar with them.  Detective Gibson
was familiar with the Nasty Boys.  They
regularly associate to commit criminal activities; they do not associate to
carry out any other types of activities or functions.  As a group, they commonly participate in such
offenses as murder, criminal attempted murder, drive-by shooting, burglary of
habitation, burglary of vehicles, theft, graffiti, retaliation, and
obstruction.

At
trial, Appellant claimed that he was not an official member of the Nasty Boys
but merely Ahung
around@ with
them.  He was familiar with their territory
in El Paso and was aware that if he entered into another gang=s territory, there might be a fight or
other conflict.  Appellant was also aware
that when he went to the party, he was invading Soco
Loco territory.  He confirmed that Jasso, Escobar, Baca, and Dominguez were members of the
Nasty Boys gang.








Appellant
went to the party with Benavidez and Jasso.  Baca and Dominguez were also there.  Appellant grew bored and went outside to
watch Dominguez and others spray graffiti on a wall.  Appellant then left the party with Benavidez
and Jasso to pick up some girls.  The group purchased beer and returned.  There were fifteen members of the Nasty Boys
at the party when he arrived.  Appellant
recalled that Martinez mentioned to him that there was a different rival gang
at the party and to avoid causing any trouble. 
After ten minutes, a Soco Loco member
approached Dominguez and told him something that agitated him.  Aguirre also began to cause trouble and said
something to Dominguez to make him angry. 
Soco Loco and the Nasty Boys were told to
leave.  Dominguez appeared mad at that
point and Awas ready
to fight.@  The two groups cursed at each other as they
walked out.  When Appellant reached the
front gate, he took off his jacket because he Aknew
there was going to be some trouble . . . maybe a fight.@  The front gate was pushed open and the Nasty
Boys rushed Soco Loco.  Appellant began chasing someone he identified
as AHooter.@  Hooter jumped a car and fell.  Appellant also jumped the car.  When Appellant saw Hooter about to get to his
feet, Appellant assumed he wanted to fight. 
Appellant punched him once and Hooter was knocked down.  At that point, someone else approached and
began to fight with Hooter.  Appellant
believed that the police were on their way or that more Soco
Loco members were coming, so he went to search for his jacket but could not
find it.  Appellant then ran to Benavidez=s car and sat in the backseat for a few
minutes waiting.  When Benavidez and Jasso returned to the car, they left.  

The
group drove to Jasso=s
house.  Escobar, Baca, Dominguez, and
Lorenzo Avila also arrived.  Jasso admitted he had hit someone with a brick.  Dominguez had also hit him with some
object.  Avila had hit him with a stick
he had in his car.  Escobar, also known
as ASnoop,@
had hit him with either a chair or a brick. 
Appellant denied that he ever punched or hit Aguirre.  








Appellant
was charged with two counts.  Count I
pertained to the offense of engaging in organized criminal activity to commit
murder and Count II for murder.  While
the jury returned a verdict of guilty under Count I for engaging in organized
criminal activity, Appellant was found not guilty of murder under Count II.[1]  The trial court sentenced him to ten years in
the  Texas
Department of Criminal Justice, probated for a period of ten years.

STANDARD OF REVIEW








In
his sole point of error, Appellant raises a legal sufficiency challenge to his
conviction.  In conducting our review, we
examine all of the evidence in a light most favorable to the verdict, both
admissible and inadmissible, in order to determine whether any rational trier of fact could have found the essential elements of
the crime as alleged in the application paragraph of the charge to the jury
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 99 S.Ct.
2781, 61 L.Ed.2d 560 (1979); Dewberry v. State, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999); Lyon v. State, 885 S.W.2d 506,
516 (Tex.App.--El Paso 1994, pet. ref=d).  Sufficiency of the evidence should be
measured by the elements of the offense in a hypothetically correct jury
charge.  Malik v. State, 953
S.W.2d 234, 239-40 (Tex.Crim.App. 1997).  A hypothetically correct jury charge is one
that Aaccurately
sets out the law, is authorized by the indictment, does not unnecessarily
increase the State=s burden
of proof or unnecessarily restrict the State=s
theories of liability, and adequately describes the particular offense for
which the defendant was tried.@  Malik, 953 S.W.2d at 240.  We
do not reexamine the evidence and impose our own judgment as to whether the
evidence establishes guilt beyond a reasonable doubt, but determine only if the
findings by the trier of fact are rational.  See Lyon, 885 S.W.2d
at 516-17.  Moreover, we do not
resolve any conflicts of fact or assign credibility to the witnesses as it is
the function of the trier of fact to do so.  See Adelman
v. State, 828 S.W.2d 418, 421 (Tex.Crim.App.
1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App.
1991); Belton v. State, 900 S.W.2d 886, 897 (Tex.App.
--El Paso 1995, pet. ref=d).  This standard of review for sufficiency of
the evidence on appeal is the same for both direct and circumstantial evidence
cases.  See Geesa
v. State, 820 S.W.2d 154, 161 (Tex.Crim.App.
1991); Garcia v. State, 871 S.W.2d 279, 280 (Tex.App.--El
Paso 1994, no pet.).  If we sustain a
legal sufficiency challenge, we must render a judgment of acquittal.  Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App.
1996). 

ENGAGING IN ORGANIZED CRIMINAL ACTIVITY

Article
71.02 of the Texas Penal Code sets out the elements of the offense of engaging
in organized criminal activity:  

(a) A person commits
an offense if, with the intent to establish, maintain, or participate in a
combination or in the profits of a combination or as a member of a criminal
street gang, he commits or conspires to commit one or
more of the following:

 

(1) murder, capital murder . . . aggravated assault . . . deadly
conduct  . . . assault punishable as a
Class A misdemeanor.

 

Tex.Pen.Code Ann. '
71.02(a)(Vernon Supp. 2002).  A criminal street gang is defined as Athree or more persons having a common
identifying sign or symbol or an identifiable leadership who continuously or
regularly associate in the commission of criminal activities.@ 
Tex.Pen.Code Ann. '
71.01(d).








The
State=s
indictment alleged two alternative means of committing the offense of engaging
in organized criminal activity. 
Paragraph A alleged that the appellant, with the intent to establish
maintain, or participate in a combination, committed the offense of
murder.  Paragraph B alleged that
appellant, as a member of a criminal street gang, committed the offense
of murder.  Since sufficiency of the
evidence is measured by the elements of the offense in the hypothetically
correct jury charge for the case, we must look to the application paragraph
which contained the alternative set out in Paragraph B: 

Now, if you find
from the evidence beyond a reasonable doubt that on or about the 27th day of
April 1997, in El Paso County, Texas, the defendant, ELISEO JARAMILLO, as a
member of a criminal street gang, namely, THE NASTY BOYS, did then and
there commit the criminal offense of MURDER of JAKE AGUIRRE, then you will find
the defendant Guilty of Engaging in Organized Criminal Activity as alleged in
Count 1, Paragraph B.  [Emphasis added].

 


The charge was
hypothetically correct.  There was no
application paragraph for Count I, Paragraph A. 
Thus, if the evidence is sufficient to support a jury finding beyond a
reasonable doubt on the essential element of Acriminal
street gang,@ the
conviction will be upheld.

THE ACRIMINAL
STREET GANG@ ELEMENT

Appellant
contends that the evidence was insufficient to show that he and the other
alleged members of the Nasty Boys formed a combination to commit the offense of
murder.  Based on the charge presented to
the jury, the State need not have proven that Appellant formed a Acombination@
to murder Aguirre.  As discussed above,
the application paragraph only included membership in Aa
criminal street gang@
as an element of the offense of engaging in organized criminal activity.  Thus, while the State=s
indictment included two alternative means of committing the murder of Aguirre,
the State was only required to prove that Appellant committed the murder as a
member of a criminal street gang. 
Appellant did not frame his complaint as a challenge to the legal
sufficiency of this element.  However, in
the interest of justice, we will entertain the complaint and review it as a
legal sufficiency challenge to the Acriminal
street gang@ element.








Appellant
seemingly argues that because he was not convicted of murder under Count II,
his conviction for engaging in organized criminal activity cannot stand.  His acquittal for the offense of murder under
Count II does not bar his conviction for engaging in organized criminal
activity.  Texas Penal Code Section 71.03
provides that a defendant need not be convicted of the underlying offense to be
found guilty of engaging in organized criminal activity under Section 71.02.  Section 71.03 provides: 

It is no defense to
prosecution under Section 71.02 that:

 

(1) one or more members of the combination are not criminally
responsible for the object offense; 

 

(2) one or more members of the combination have been acquitted,
have not been prosecuted or convicted, have been convicted of a different
offense, or are immune from prosecution; 

 

(3) a person has been charged with, acquitted, or
convicted of any offense listed in Subsection (a) of Section 71.02; or 

 

(4) once the initial combination of three or more persons is
formed there is a change in the number or identity of persons in the
combination as long as two or more persons remain in the combination and are
involved in a continuing course of conduct constituting an offense under this
chapter.  [Emphasis added].

 

Tex.Pen.Code Ann. ' 71.03 (Vernon 1994).

 








Detective
Gibson testified that he was familiar with the Nasty Boys and that Appellant
was a member of the gang.  He also identified  Javier
Quesada, Jose Benavidez, Francisco Dominguez, Juan Jasso,
Richard Baca, and Carlos Escobar--all named in the State=s
indictment--as members of the Nasty Boys. 
Appellant admitted that each of these individuals was a member the
gang.  While Appellant denied that he was
a member and claimed he merely Ahung
around@ with
them, the jury, as the trier of fact, was entitled to
evaluate his credibility and disbelieve his testimony in light of the rest of
the evidence presented.  Detective Gibson
further explained that the Nasty Boys had no other purpose for associating
other than the commission of criminal activities.  Some of these activities included murder,
criminal attempted murder, drive-by shooting, burglary, theft, graffiti,
retaliation, and obstruction.  Appellant
admitted that he was familiar with the territory of the Nasty Boys in
El Paso and aware that if he entered into another gang=s territory, there might be a fight or
other conflict.  Appellant was also aware
that when he went to the party he was invading Soco
Loco territory.

Several
witnesses  testified
that Soco Loco member, Hooter, repeatedly threw gang
signs at the Nasty Boys in an effort to agitate them.  The Nasty Boys also threw their gang signs at
Soco Loco while being escorted out of the party.  Appellant watched other members of the Nasty
Boys spray graffiti on a wall while attending the party.  The State introduced into evidence properly
authenticated photographs of graffiti found by detectives on the sidewalk near
the site of the beating. The jury could have reasonably concluded that the
graffiti was left by the Nasty Boys. 
This evidence was sufficient to establish a finding of the criminal
street gang element beyond a reasonable doubt: 
three or more persons (Appellant, Quesada, Benavidez, Dominguez, Jasso, Baca, and Escobar) having a common identifying sign
or symbol or an identifiable leadership (graffiti sprayed on sidewalk, gang
signs thrown at party) who regularly associate in the commission of criminal
activities (murder, criminal attempted murder, drive-by shooting, burglary,
theft, graffiti, retaliation, obstruction). 
While only Myrna affirmatively identified Appellant as one of the Nasty
Boys who beat Aguirre, the evidence was sufficient to show that Appellant=s actions--together with the actions of
other named members of the gang--culminated in the murder of Aguirre.








The
jury was entitled to judge the credibility of the witnesses and could have
rationally concluded that Appellant participated in the beating of
Aguirre.  He need not have committed the
murder alone and he need not have delivered the final blow that caused Aguirre=s death.  As long as there was sufficient evidence
establishing that he participated in the beating as part of a criminal street
gang that ultimately led to the Aguirre=s
death, his conviction for engaging in organized criminal activity should be
upheld.  Appellant=s
sole issue is overruled.  Finding the
evidence legally sufficient, we affirm the judgment of conviction.

 

 

June 13, 2002

                                                                        


ANN CRAWFORD McCLURE, Justice

 

Before Panel No. 4

Barajas, C.J., Larsen, and
McClure, JJ.

 

(Do Not Publish)











[1]  Count I of the
indictment read in relevant part:

 

[O]n or before the 27TH DAY OF APRIL, 1997 . . .
ELISEO JARAMILLO . . .

PARAGRAPH A

with intent to establish, maintain, or participate in
a combination with JAVIER QUEZADA, JOSE BENAVIDEZ, FRANCISCO DOMINGUEZ, JUAN
JASSO, RICHARD BACA AND CARLOS ESCOBAR did then and there commit the criminal
offense of MURDER of JAKE AGUIRRE, 

 

PARAGRAPH B

as a member of a criminal
street gang, namely, THE NASTY BOYS, and with intent to establish, maintain, or
participate in a combination, with JAVIER QUEZADA, JOSE BENAVIDEZ, FRANCISCO
DOMINGUEZ, JUAN JASSO, RICHARD BACA AND CARLOS ESCOBAR did then and there
commit the criminal offense of MURDER of JAKE AGUIRRE . . . .