COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| ANGEL CALLEROS, | § | No. 08-09-00231-CR |
| Appellant, | § | Appeal from the |
| V. | § | 243rd District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20080D02628) |
|  | § |  |
|  | § |  |

**O P I N I O N**

Angel Calleros was convicted of theft of property valued at $1,500 or more, but less than $20,000. Appellant was sentenced to 24 months' confinement and fined $6,000. In his sole issue on appeal, Appellant challenges his conviction on the basis that the evidence was legally insufficient to support it because the State failed to prove that Hoy Fox Toyota had a greater right to possession of the stolen property than Appellant did.

On December 29, 2007, Mrs. Ofelia Gallardo and her husband, Mr. Armando Gallardo, accompanied by Mrs. Gallardo's sister, Mrs. Esperanza Villegas, went to Hoy Fox Toyota to buy a car. Mrs. Gallardo found a 2005 Toyota XA that she wanted, and the Gallardos negotiated with Appellant, a Hoy Fox Toyota salesman. The Gallardos agreed to purchase the car for $8,995, and gave Appellant $6,000 in cash for a down payment. The only documentations Appellant tendered to the Gallardos for the purchase of this vehicle were pieces of paper on which he indicated in his handwriting the vehicle's sticker price at $14,995, the sale price at $11,995 plus

tax, title, and license fees, and the final reduced price at $8,995 with a down payment of $6,000. When the Gallardos picked up the Toyota XA, there was a lock box or a container attached to the vehicle's key.

Meanwhile, on January 7, 2008, Appellant signed a voluntary separation of employment with Hoy Fox Toyota, citing personal reasons for doing so. This happened before Mrs. Gallardo and Mrs. Villegas came back to the dealership to inquire about the vehicle's lock box.

A few days after taking possession of the Toyota XA, Mrs. Gallardo sent Mrs. Villegas to Hoy Fox Toyota to have the dealership remove the lock box that was attached to the key because it made starting the vehicle difficult. Mrs. Villegas went back to the dealership and met with Ms. Elvia Rubio, Hoy Fox Toyota's finance manager. According to Ms. Rubio, if a vehicle had been legitimately sold, this container would not still be attached to the key when it was released to the customer. Moreover, after checking the Hoy Fox Toyota sales database, Ms. Rubio failed to find any record of the Toyota XA's sale. Later that day, Mrs. Gallardo went to Hoy Fox Toyota, and after speaking to Ms. Rubio, she understood that somebody stole the $6,000 down payment she had previously made. A few days later, however, Hoy Fox Toyota informed the Gallardos that it would honor the original deal, and would sell them the Toyota XA for the $8,995 price plus tax, title, and license fees, and that it would credit them the $6,000 down payment they had given Appellant, despite the fact that Appellant never turned this sum over to the dealership. In the reworked agreement, in addition to the $8,995 base price, the Gallardos also agreed to purchase a vehicle service agreement and gap insurance for their Toyota XA.

On June 3, 2008, the State of Texas filed an indictment for theft of property against Appellant. The indictment alleged that Appellant unlawfully appropriated U.S. currency valued

-2-

at $1,500 or more, but less than $20,000, "without the effective consent of the owner, namely, ELVIA RUBIO or HOY FOX TOYOTA, with intent to deprive said owner of said property."[1] At the jury trial, after the State rested, Appellant moved for an instructed verdict on the basis that there was a lack of evidence that the money belonged to Hoy Fox Toyota, the named victim in the indictment, but the trial court denied this motion. At the end of trial, the jury found Appellant guilty of the offense and assessed punishment at twenty-four months' confinement with a fine of $6,000. Appellant filed his notice of appeal on August 7, 2009.

In his sole issue, Appellant challenges the legal sufficiency of the evidence supporting his conviction. Appellant argues the evidence was legally insufficient because the State failed to prove that at the time of the alleged offense, Hoy Fox Toyota had a greater right to possession of the $6,000 down payment than he did. When reviewing the evidence submitted at trial to determine its legal sufficiency, this Court examines all evidence, both properly and improperly admitted, in a light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the alleged offense beyond a reasonable doubt. *Miramontes v. State*, 225 S.W.3d 132, 139-40 (Tex.App.--El Paso 2005, no pet.). Legal sufficiency of the evidence should be assessed by the elements of the particular offense as indicated by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 239-40 (Tex.Crim.App. 1997). In our review, we are not to re-examine the evidence, imposing our own

---

[1] The original indictment alleged that Appellant stole the $6,000 from Ms. Elvia Rubio or Hoy Fox Toyota. Before trial, the State abandoned the allegation of Ms. Rubio as an owner, and proceeded only on the allegation of Hoy Fox Toyota as the owner of the stolen money. The record shows that after obtaining the trial court's permission, the prosecutor crossed out Ms. Rubio's allegation in the original indictment, but the indictment in the Clerk's Record fails to reflect this change.

judgment as to whether guilt has been properly established beyond a reasonable doubt; rather, we are only to assess if both the explicit and implicit findings by the trier of fact are rational. *Lyon v. State*, 885 S.W.2d 506, 516-17 (Tex.App.--El Paso 1994, pet. ref'd). Evidentiary inconsistencies are resolved in favor of the verdict. *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). This standard of review is applicable to both direct and circumstantial evidence cases. *Garcia v. State*, 871 S.W.2d 279, 280 (Tex.App.--El Paso 1994, no pet.). "The trier of fact, not the appellate court, is free to accept or reject all or any portion of any witness's testimony." *Belton v. State*, 900 S.W.2d 886, 897 (Tex.App.--El Paso 1995, pet. ref'd). Accordingly, a jury's findings of fact in a criminal proceeding are given substantial deference. *Leyva v. State*, 840 S.W.2d 757, 759 (Tex.App.--El Paso 1992, pet. ref'd).

At trial, Appellant argued that because Ms. Rubio initially testified that Mrs. Gallardo's $6,000 down payment belonged to Mrs. Gallardo, and because there was no contract and no deal between Mrs. Gallardo and Hoy Fox Toyota when Appellant took the sum, Mrs. Gallardo was the owner of the sum. On appeal, Appellant again complains that the State failed to prove the ownership allegation in the indictment, specifically that the State failed to prove that Hoy Fox Toyota was the owner of the stolen $6,000. In Appellant's brief, he cited to the Reporter's Record in arguing that because Ms. Rubio testified she had told Mrs. Gallardo that they did not have a deal, that the paperwork between Appellant and Mrs. Gallardo was bogus, that Hoy Fox Toyota eventually honored the "no deal" and took the $6,000 loss, and that Hoy Fox did not have any record indicating that the $6,000 was turned into anyone at the dealership, the $6,000 belonged to Mrs. Gallardo, and not Hoy Fox Toyota.

The State makes two arguments in response to Appellant's sole issue. It first argues that

the name of the owner of stolen property is not a substantive element of a theft offense such that it is not required to be included in the hypothetically correct jury charge in a prosecution for theft, and so any failure on the part of the State to prove the name alleged in the charging instrument as the owner does not render the evidence legally insufficient to support Appellant's conviction for theft. The State's second argument is that even if the name of the owner alleged in the indictment is a substantive element of the theft offense that must be included in the hypothetically correct jury charge and proved beyond a reasonable doubt, the evidence in this case was legally sufficient to support the jury's implicit finding that Hoy Fox Toyota was the owner of the stolen $6,000.

In this case, the indictment alleged that the owner of the said stolen property was Hoy Fox Toyota. Regardless of the State's argument with respect to the owner's name as alleged in the indictment, we conclude the evidence in this case was legally sufficient to support the jury's implicit conclusion that Hoy Fox Toyota had a greater right to possession of the $6,000 than Appellant.

Section 31.03(a) of the Texas Penal Code sets out the offense of theft: A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of the property. TEX.PEN.CODE ANN. § 31.03(a)(West 2011). Theft of property is a state jail felony if the value of the property stolen is $1,500 or more but less than $20,000. TEX.PEN..CODE ANN. § 31.03(e)(4). Under the Texas Penal Code, "owner" is defined as "a person who . . . has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor [.]" TEX.PEN.CODE ANN. § 1.07(a)(35)(A)(West 2011). "Possession" is defined as "actual care, custody, control or management" over the property. *Id*. at § 1.07(39).

Therefore, any person who has a greater right than the defendant to the actual care, custody, control, or management of the property can be alleged as the owner. *Alexander v. State*, 753 S.W.2d 390, 392 (Tex.Crim.App. 1988). The "greater right to possession" method of proving ownership can apply to all offenses and factual settings. *Id*. at 392-93.

At trial, Ms. Rubio testified that in January 2008, Mrs. Villegas came to her and asked to have the Toyota XA's lock box removed. According to Ms. Rubio, if a Hoy Fox Toyota car salesman legitimately sold a vehicle, this container would never be attached after the sale. When Ms. Rubio went into the Hoy Fox Toyota database to retrieve data regarding this deal, she concluded something was amiss because the system did not include a sales record of the Toyota XA. Once she discovered that there was a problem and notified Mrs. Villegas about it, Mrs. Villegas fetched Mrs. Gallardo and brought her to the dealership that afternoon. Ms. Rubio then asked Mrs. Gallardo to bring her any paperwork she had with respect to this vehicle. When the sisters came back with the receipts, they also informed Ms. Rubio that Appellant was the salesman involved in the instant transaction. Upon obtaining the receipts, Ms. Rubio immediately noticed something was wrong because the documentations were on plain pieces of paper and not on company letterheads, and they did not contain the manager's signature.[2] Another red flag that arose in Ms. Rubio's mind was that the cost of the vehicle was over $1,200 below what the dealership paid for it, and according to Ms. Rubio, selling at a loss rarely occurred at Hoy Fox Toyota, particularly not without a manager's signature or proper authorization by management. Ms. Rubio testified that Hoy Fox Toyota's car salesmen were

---

[2] According to Hoy Fox Toyota procedures, all car salesmen are expected to clear a customer's counteroffers with the manager.

typically not allowed to reduce the sales price without a manager's signature. If a salesman receives a down payment from a customer, the proper procedure for him is to take it to the finance department at the dealership to get a receipt with the company's information, and obtain management's signature to show it received the payment. Ms. Rubio testified it was not proper procedure for a salesman to take possession of the payment for himself. In this instance, there was nothing in Hoy Fox Toyota's database showing a receipt being issued to anyone, including Appellant, for the Gallardos' $6,000 down payment. Moreover, when Ms. Rubio attempted to contact Appellant regarding this transaction, she discovered that Appellant had already quit the dealership's employment.

On the first day of trial, Ms. Rubio testified as follows: "And when I told [Mrs. Gallardo] that we pretty much didn't have a deal, we didn't have a contract, and then especially after seeing that paperwork, I told her there's no way that this is happening, because there's -- it's not our paperwork." When asked by trial counsel whether Hoy Fox Toyota honored this particular deal, Ms. Rubio testified that it did, and that it took a $6,000 loss in doing so. On cross-examination by defendant's counsel, Ms. Rubio testified that when she was not able to find any record regarding the sale of the Toyota XA, she told the Gallardos that there was no contract and no deal, and because there was no contract, the missing money belonged to the Gallardos; not Hoy Fox Toyota. On the second day of trial, however, the following exchange occurred between Ms. Rubio and the State's counsel upon redirect examination:

> Q.    At the point in time at which the money came into the hands of the defendant, at that instant, who did the money belong to?
>
> A.    To the dealership.

Q. And why do you say that?

A. A customer purchased a vehicle and the money was turned in to our salesman.

. . .

Q. Did it belong to Ms. Ofelia any longer?

A. No, sir.

Q. Okay. And why not?

A. Because it was given to our employee.

Q. And where should the money have gone at that point?

A. He should have taken the customer to finance so that money could be receipted and do the proper – the proper documentation with a receipt.

Q. Okay. So is it fair to say it should have gone into the hands of the dealership?

A. Yes, sir.

Q. Did it come into the hands of the dealership?

A. No, sir.

Q. Now, yesterday when you were testifying in cross-examination I believe you said something different along the lines of there was no contract and therefore it wasn't the dealership's money. Am I remembering that right?

A. Yes, sir.

Q. Okay. Was that correct?

A. No.

Q. Okay. Did you mean to say that?

A. Not really.

Q. Okay. Why was it that you said what you said?

-8-

A.      Because I was nervous.

Later, when asked by the State's counsel as to who the $6,000 belonged to "[a]t the moment the money came into the defendant's hands . . .," Ms. Rubio responded:  "To the dealership because he's our employee."

Based on the evidence, the jury could have reasonably concluded that Hoy Fox Toyota was the owner of the $6,000 down payment, as defined under the Penal Code, such that Appellant's appropriation of, or exercise of control over, the $6,000 without the dealership's consent was unlawful.  *See* TEX.PEN.CODE ANN. § 1.07(a)(35)(A); *Sowders v. State*, 693 S.W.2d 448, 451-52 (Tex.Crim.App. 1985)(holding that the county treasurer had a greater right to possession of certain tax revenue than did appellant, who was employed by the county tax office as a clerk and who pocketed the revenue instead of turning it over to the county treasurer, because the money passed into the county's possession as soon as it came into the appellant's possession).  Viewed in the light most favorable to the verdict, we conclude a rational jury could have determined beyond a reasonable doubt that Hoy Fox Toyota was the owner of the $6,000, with a greater right to possession of the $6,000 than Appellant.  Accordingly, the evidence was legally sufficient to support the jury's verdict.  Issue One is overruled.

Having overruled Appellant's sole issue, we affirm the trial court's judgment.


August 3, 2011
                                        DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)


-9-