COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| CESAR SAVIEL SALINAS-TINOCO, | § | No. 08-13-00310-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | Criminal District Court No. 7 |
| | § | |
| THE STATE OF TEXAS, | § | of Dallas, Texas |
| | § | |
| Appellee. | § | (TC# F12-22231-Y) |
| | § | |

## **O P I N I O N**

Appellant was convicted of murder arising from a vehicle-pedestrian collision and sentenced to 25 years in prison. He brings two issues for review, one pertaining to the sufficiency of the evidence, and the other complaining of due process violations. For the reasons that follow, we affirm.

### FACTUAL SUMMARY

#### **The Party**

On February 12, 2012, Appellant Cesar Salinas-Tinoco and his girlfriend, Julia, attended a birthday party at a vitamin shop where Julia worked. There were several of the couple's friends and family in attendance, including Julia's son-in-law, Giovanni Flores, and his wife. Flores invited the victim, Fernando Martinez Garcia, and his wife to the birthday party as well.

Several of the adults were drinking and according to Flores, Appellant was drunk. At one point during the party, Appellant became upset and threw his cellphone at Julia's feet, almost hitting some of the children. Appellant also became confrontational and when he attempted to start a fight with a woman, three people nearby tried to jump on him. Flores then escorted Appellant outside and away from the party.

## The Parking Lot

Flores walked Appellant to his vehicle, a black Nissan Xterra, in the parking lot and noticed that Garcia followed them. Flores tried to push Appellant into his car, but he was yelling at Garcia. Flores was standing next to the driver's side and Garcia was standing behind him. Once Appellant got into his car, he drove forward slowly and struck Garcia's car bumper and license plate. Garcia walked over to straighten out his license plate and told Appellant to apologize for hitting his car. Appellant then backed up about ten feet. Flores thought that Appellant was leaving, but instead, Appellant drove forward and accelerated. He struck both Garcia and the corner of Garcia's white Dodge Stratus. Flores heard Appellant yelling that he was going to kill Garcia. Flores testified that the impact from Appellant's car was so great that it almost went up onto Garcia's car. After hitting Garcia, Appellant drove away.

Flores took his jacket off and covered Garcia, who was crying but otherwise non-responsive. Flores ran back inside to find his wife so she could call an ambulance. The police, fire department, and ambulance arrived several minutes later. When the police and detectives interviewed Flores at the scene, he told them that Appellant hit Garcia with his car and then identified Appellant who was still on the premises, parked behind a dumpster. One paramedic, Earath Rosson, testified that when he arrived, Garcia was unconscious, and had snoring

2

respirations that often coincided with an ear injury and his unconscious state. The paramedics at the scene believed that Garcia suffered from both a head and spinal injury.

## Onsite Police Investigation

Officer Dunn arrived at the scene and set up a perimeter. He noticed a pool of blood by Garcia's car where he had been lying on the ground. The front of Garcia's vehicle was damaged. Yaw marks, tracks left behind from spinning tires in the parking lot, indicated to him that a vehicle left the parking lot at a high rate of speed. Dunn then noticed a black Nissan Xterra in the parking lot that matched the description he received of the suspect's vehicle. Dunn walked over to the car and talked to the driver. Appellant told the officer that he needed to get through the crime scene. Dunn noticed that Appellant's eyes were glassy and bloodshot, his responses and motor skills were slow, and his breath smelled of alcohol. When Dunn asked for Appellant's identification, he fumbled with his wallet and all of his cards fell out into his car. At that point, Dunn knew he was the suspect the police were seeking. Dunn asked Appellant to step out of his car, and he placed Appellant in handcuffs.

## The Hospital

The paramedics immediately transported Garcia to Parkland Hospital where he arrived at 1:45 a.m. with a Glasgow Coma Score ("GCS") of 3. The GCS is a measurement tool by which physicians and other providers communicate the level of consciousness in patients, particularly in the trauma setting of head injuries. The scale runs from 3, which is the worst and indicates a severe comatose state, to 15, which reflects a normal level of alertness and functioning. Garcia had a blood alcohol level of .263 and drugs were present in his system. Dr. Christiana Hall, a neurologist/neurointensivist, attended to Garcia when he arrived at the hospital. In her opinion,

he could not have survived the injuries he sustained.  She performed a brain testing examination and when there was no response, she declared Garcia braindead at 4:52 p.m.

### The Medical Evidence

Dr. Jill Urban performed the autopsy.  Garcia sustained external injuries, including a bruise to his chest and a large abrasion to his left knee.  Dr. Urban determined that Garcia died as a result of the blunt force injuries he sustained to his skull and brain.  These internal injuries included bleeding within the scalp, a swollen brain, a fractured skull, and a large blood clot--a subdural hematoma--on this brain.  Dr. Urban testified that such injuries would be consistent with a person being hit by a car.

## SUFFICIENCY OF THE EVIDENCE

In his first point of error, Appellant complains that the evidence is insufficient to support a conviction of murder.  Specifically, he argues that the State failed to prove that Appellant murdered Garcia because there was conflicting testimony and Flores' eyewitness account of the incident "did not make sense and [is] not supported by the medical evidence or the physical evidence."  We disagree.

### Standard of Review

In conducting our legal sufficiency review, we must examine all of the evidence in a light most favorable to the verdict, and determine whether, based on that evidence and reasonable inferences therefrom, any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime as alleged in the application paragraph of the jury charge. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007), *citing Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999), *holding modified by Guidry v. State*, 9 S.W.3d 133 (Tex.Crim.App.

4

1999).  In *Malik v. State*, the Court of Criminal Appeals articulated the modern Texas standard for ascertaining what the "essential elements of the crime" are -- they are "the elements of the offense as defined by the hypothetically correct jury charge for the case."  953 S.W.2d 234, 240 (Tex.Crim.App. 1997); *see also Clinton v. State*, 354 S.W.3d 795, 799 (Tex.Crim.App. 2011).  A hypothetically correct jury charge is one that at least "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."  *Malik*, 953 S.W.2d at 240.

In our analysis, we do not reexamine the evidence and impose our own judgment as to whether the evidence establishes guilt beyond a reasonable doubt, but determine only if the findings by the trier of fact are rational.  *See Lyon v. State*, 885 S.W.2d 506, 516-17 (Tex.App.--El Paso 1994, pet. ref'd).  The exclusive judge of the credibility of a witness is the fact finder.  *Lancon v. State*, 253 S.W.3d 699, 707 (Tex.Crim.App. 2008).  The fact finder also determines the weight that is given to the witnesses and their testimony, and may choose to believe some testimony and disbelieve other testimony.  *Id.*  Therefore, we do not assign credibility to witnesses or resolve any conflicts of fact.  *Id.*; *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991); *Belton v. State*, 900 S.W.2d 886, 897 (Tex.App.--El Paso 1995, pet. ref'd).  We resolve any inconsistencies in the testimony in favor of the verdict rendered.  *Lancon*, 253 S.W.3d at 707.

The standard of review for sufficiency of the evidence applies to both direct and circumstantial evidence cases.  *See Powell v. State*, 194 S.W.3d 503, 506 (Tex.Crim.App. 2006); *Garcia v. State*, 871 S.W.2d 279, 280 (Tex.App.--El Paso 1994, no pet.).  If we sustain a legal sufficiency challenge, it follows that we must render a judgment of acquittal.  *Clewis v. State*,

5

922 S.W.2d 126, 133 (Tex.Crim.App. 1996), *overruled on other grounds by Brooks v. State*, 323 S.W.3d 893 (Tex.Crim.App. 2010).

<u>Analysis</u>

The State's indictment alleged two theories of guilt in this case. To convict Appellant of murder, the jury was required to find that Appellant intentionally or knowingly caused the death of Garcia; or intended to cause serious bodily injury to Garcia and committed an act clearly dangerous to human life that caused the death of Garcia. TEX.PEN.CODE ANN. § 19.02(b)(1), (2)(West 2011). The record supports the following circumstances of Appellant's guilt. First, Flores -- the only eyewitness to the incident -- witnessed Appellant strike Garcia with his car. *See Bowden v. State*, 628 S.W.2d 782, 784-85 (Tex.Crim.App. 1982)(holding that testimony from a single eyewitness may be sufficient to support a conviction). Second, Flores heard Appellant threaten to kill Garcia as he sped toward him. *Ross v. State*, 133 S.W.3d 618, 621 (Tex.Crim.App. 2004)(defendant threatened the complainant with violence before the murder); *Silva v. State*, 995 S.W.2d 872, 874 (Tex.App.--Waco 1999, no pet.)(defendant threatened to kill the complainant the night before the murder). Finally, the medical and physical evidence concerning the injuries Appellant sustained were consistent with his being struck by a vehicle. *Payne v. State*, No. PD-1214-11, 2013 WL 765578, at *7 (Tex.Crim.App. Feb. 27, 2013, no pet.)(not designated for publication)(holding that evidence is sufficient to support conviction where gunshot wounds sustained by victims were consistent with the use of defendant's rifle); *McCumber v. State*, Nos. 04-00-00488-CR & 04-00-00489-CR, 2002 WL 663646, at *3 (Tex.App.--San Antonio Apr. 24, 2002, no pet.)(not designated for publication)(also holding evidence is sufficient where circumstantial evidence was admitted to show the injuries and damage to defendant's car were consistent with a high speed collision). The inconsistencies of

6

which Appellant complains were all before the jury. As discussed above, the jury is the exclusive judge of the facts, the credibility of the witnesses, and of the weight to be given to the testimony. Moreover, reconciliation of conflicts and contradictions in the evidence is within the province of the jury, and such conflicts will not call for reversal if there is enough credible testimony to support the conviction. *Bowden*, 628 S.W.2d at 784. Moreover, while Appellant insists that the medical and physical evidence does not support Flores's eyewitness account, Dr. Urban testified that Appellant's internal injuries to his skull and brain were in fact consistent with being hit by a car. Dr. Hall also opined that given their nature, Appellant could not have survived the injuries he sustained. Viewing the evidence in the light most favorable to the jury's verdict, as we are required to do, we conclude that the evidence is legally sufficient to support's Appellant's murder conviction. We overrule Point of Error No. one.

## DUE PROCESS

In his second point of error, Appellant alleges that the State violated his right to due process and a fair trial because law enforcement failed to conduct a meaningful investigation. "The State has a duty to seek the truth in its investigation of crimes, and where its investigative procedures are so seriously flawed that they undermine confidence in the verdict, the accused's right to due process has been violated." *Godinez v. State*, No. 08-12-00218-CR, 2014 WL 4639404, at *5 (Tex.App.--El Paso Sept. 18, 2014, no pet.)(not designated for publication); *Cook v. State*, 940 S.W.2d 623, 630 (Tex.Crim.App. 1996), c*iting Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *Ex parte Brandley*, 781 S.W.2d 886 (Tex.Crim.App. 1989).

Appellant's arguments here are nearly identical to the argument we previously addressed in *Godinez*. As observed by the State in its brief, Appellant failed to raise any complaint in the

7

trial court that his due process rights were violated due to a seriously flawed investigation. *Godinez*, 2014 WL 4639494, at \*5. A party must present a timely request, objection, or motion to the trial court that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion, in order to properly preserve an issue for review. *Id.*; TEX.R.APP.P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex.Crim.App. 2012). Even constitutional rights, including those that implicate a defendant's due process rights, may be waived for purposes of appellate review unless properly preserved. *Anderson v. State*, 301 S.W.3d 276, 280 (Tex.Crim.App. 2009); *see e.g., Aldrich v. State,* 104 S.W.3d 890, 896 (Tex.Crim.App. 2003); *Delrio v. State,* 840 S.W.2d 443, 445 (Tex.Crim.App. 1992); *Gauldin v. State,* 683 S.W.2d 411, 413 (Tex.Crim.App. 1984), *overruled on other grounds, State v. Guzman,* 959 S.W.2d 631, 634 (Tex.Crim.App. 1998); *Mendoza v. State,* 552 S.W.2d 444, 450 (Tex.Crim.App. 1977); *Gibson v. State,* 516 S.W.2d 406, 409 (Tex.Crim.App. 1974); *Ex parte Bagley,* 509 S.W.2d 332, 333-34 (Tex.Crim.App. 1974); *Salas v. State,* 486 S.W.2d 956, 957 (Tex.Crim.App. 1972); *Valdez v. State,* 472 S.W.2d 754, 756 (Tex.Crim.App. 1971). According, we find that Appellant failed to preserve this issue for our review.

Even if Appellant had preserved the issue, the record does not support his contention. We look to the totality of the circumstances in determining whether an accused's due process rights under the Fourteenth Amendment have been violated as a result of the State's investigative procedures. *Ex parte Brandley*, 781 S.W.2d at 893. Appellant specifies several incidents of the State's failure to conduct a meaningful investigation. His allegations appear to be mere speculation and he has failed to provide any support for his argument. Contrary to these assertions, a crime scene was established; police and detectives conducted interviews at the crime scene, including an interview with eyewitness Flores; Officer Dunn spoke with Appellant

8

and concluded that he matched the description of the suspect; and medical personnel concluded that Garcia's injuries were consistent with a motor vehicle-pedestrian accident. We cannot conclude that the investigation conducted by law enforcement was so seriously flawed that Appellant was denied due process of law. We overrule Point of Error No. Two and affirm the judgment of the trial court.


April 22, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)