COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| ROBERT DICKSON, | | No. 08-09-00248-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | Criminal District Court No. 1 |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 20080D04351) |
| | § | |
| | § | |

**O P I N I O N**

Robert Dickson was convicted of possession of marijuana, more than five pounds, but less than fifty. He was sentenced to 4 years' imprisonment and fined $500. On appeal, he challenges the legal and factual sufficiency of the evidence supporting the conviction.

In May 2008, Appellant was employed as a clerk in an El Paso UPS Store. His duties included handling "high-value" and "high-risk" packages, and, generally, he worked in an office away from the store's main customer service counter. According to Appellant, at the beginning of each shift, he would print a list of the high-value packages scheduled to move through the facility that day. He was responsible for locating those packages in the warehouse and moving them to their designated delivery vehicle. Delivery drivers were required to sign for this type of package, to acknowledge it was in their possession for delivery. Appellant was also responsible for moving high-value packages awaiting delivery into the facility's secure cage while they awaited delivery. Appellant's only contact with the store's customer service counter was when

he was called to take possession of a high-value package from a customer and secure it in the cage.

Harry Cutshall, Jr. worked at the UPS store as a security guard. On May 8, 2008, he was stationed behind the customer counter, observing customer transactions, when Appellant came into the store to mail a package. Appellant was not scheduled to work that day. Appellant arrived at the store in a car driven by another man. While Appellant was in the store arranging to ship the package, the other man stayed in the car. Mr. Cutshall saw Appellant personally enter the shipping information into a UPS computer. Then, despite store policy that off-duty employees were not allowed behind the service counter, Appellant personally carried the package into the UPS warehouse. Appellant returned from the warehouse without the package, and Mr. Cutshall witnessed Appellant get back in the car he arrived in, where the other man was still waiting.

Because Appellant's self-handling of the package was unusual, Mr. Cutshall went to see where Appellant left the package. He found the package inside the high-risk cage even though it was not denoted as high value. Mr. Cutshall also noted that the package was marked for shipment to Indianapolis, Indiana. Mr. Cutshall immediately contacted his supervisors to report Appellant's unusual actions. Mr. Cutshall's supervisors contacted the El Paso Police Department to investigate the package further.

The El Paso Police Department's Alpha Task Force was dispatched with a canine unit to investigate the package. The canine alerted to the package. Based on the canine's alert, the officers obtained a search warrant and opened the box. Inside, the officers found several bundles of marijuana, weighing over thirteen pounds. During trial, a task force officer testified that in

El Paso, a "source city," the marijuana was worth approximately $250 per pound. The officer opined that in a "destination city" such as Indianapolis, the same marijuana was worth approximately $750 per pound.

Approximately one week earlier, Mr. Cutshall overheard Appellant asking other UPS employees about shipping procedures. Specifically, Appellant spoke with Lucy Rojas, a UPS customer service clerk. She recalled Appellant asking her how much it would cost to ship a package, which he specified he wanted to be delivered on a Saturday, via next-day or second-day air. Appellant's questions seemed odd to Ms. Rojas because of Appellant's experience with UPS. On May 9, the day after he shipped his package, Appellant asked Ms. Rojas to check on the package with a tracking number. According to Ms. Rojas, Appellant was concerned about the package, and "was afraid." When she entered the information into the computer system, Ms. Rojas told Appellant the package had not been delivered. She did not tell Appellant the status of the package, but reported the information to a store security guard.

During trial, Appellant offered his own explanation for the package and his behavior. He testified that his job kept him away from the customer service counter, and that he had little knowledge of UPS's customer service procedures. According to Appellant, he asked Ms. Rojas about different delivery options out of curiosity, because he did not know about that part of the business. He also testified that this was the first package he had ever shipped as a UPS customer and that he agreed to ship the package as a favor to his friend, "David." Appellant explained that he knew David because they used the same barber. Appellant often went to get his weekly hair-cut on his way home from work and wore his UPS shirt or cap.

Appellant testified that he agreed to mail the package for David strictly as a favor and that

he did not expect to be paid for the errand. The two men met at the barber shop and Appellant rode with David to a house where they picked the package up, and then to the store. When they arrived in the parking lot, David instructed Appellant to have the package delivered on Saturday, gave Appellant money to pay for the shipping, and then waited in the car while Appellant went into the store. The shipping information indicated the sender was a company called "Fine Print." When Appellant entered the store, he asked the clerk on duty what he needed to do to send the package. He testified that the clerk instructed him to enter the delivery information into the computer, then he took the package to the counter to pay. When a question came up about the contents of the package, Appellant went back out to the car where David told him the package contained computer parts and accessories, worth between $1,500 and $1,700. Appellant testified that he thought he requested and paid for the package to be designated as "high-value." He also explained that he personally carried the package to the security cage because he had never been told that UPS had a policy prohibiting off-duty employees from doing so.

Appellant raises two issues on appeal, challenging the legal and factual sufficiency of the evidence supporting his conviction. Specifically, Appellant contends the State failed to establish he was consciously aware that the package contained illegal drugs.

As a preliminary matter, we must note that since Appellant filed his brief in this case, the Texas Court of Criminal Appeals has ruled that the only standard applicable to determine whether the evidence is sufficient to support each element of a criminal offense is the standard for legal sufficiency defined by *Jackson v. Virginia*. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010)(holding that "the *Jackson v. Virginia*, standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each

-4-

element of a criminal offense . . .").  Therefore, without addressing the merits of Appellant's

factual insufficiency argument further, we overrule Issue Two.

When reviewing the evidence submitted at trial to determine its legal sufficiency, this

Court examines all presented evidence, both properly and improperly admitted, in a light most

favorable to the verdict, to determine whether any rational trier of fact could find the essential

elements of the alleged offense beyond a reasonable doubt.  *Miramontes v. State*, 225 S.W.3d

132, 139-40 (Tex.App.--El Paso, 2005, no pet.).  In our review, we are not to re-examine the

evidence, imposing our own judgment as to whether guilt has been properly established beyond a

reasonable doubt; rather, we are only to assess if both the explicit and implicit findings by the

trier of fact are rational.  *Lyon v. State*, 885 S.W.2d 506, 516-17 (Tex.App.--El Paso 1994, pet.

ref'd).  Evidentiary inconsistencies are resolved in favor of the verdict.  *Matson v. State*, 819

S.W.2d 839, 843 (Tex.Crim.App. 1991).

This standard is applicable to both direct and circumstantial evidence cases.  *See Garcia

v. State*, 871 S.W.2d 279, 280 (Tex.App.--El Paso 1994, no pet.).  "The trier of fact, not the

appellate court, is free to accept or reject all or any portion of any witness's testimony."  *Belton v.

State*, 900 S.W.2d 886, 897 (Tex.App.--El Paso 1995, pet. ref'd).  Accordingly, a jury's findings

of fact in a criminal proceeding are given substantial deference.  *Leyva v. State*, 840 S.W.2d 757,

759 (Tex.App.--El Paso 1992, pet. ref'd).

Conviction for the criminal offense of possession of marijuana requires a finding that the

defendant was consciously aware of the illegal substance.  *See* TEX.HEALTH & SAFETY CODE

ANN. § 481.121(a)(West 2010); *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995).  To

establish a criminal defendant's conscious knowledge of the marijuana, the State must generally

rely on circumstantial evidence that "affirmatively links" the defendant to the drugs in a manner that demonstrates the defendant's connection to the drugs was more than fortuitous. *See Brown*, 911 S.W.2d at 747. Although there are numerous types of evidence and factual scenarios that Texas courts have recognized as indicative of a person's possession of an illegal substance, the "affirmative links" rule is not a litmus test. *See Evans v. State*, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006). The central inquiry in any possession case is whether the logical force of the evidence indicates that the defendant's possession of the illegal substance was more than fortuitous. *See Brown*, 911 S.W.2d at 747.

Although we recognize that Appellant testified that he was not aware that the package contained marijuana, the jury, as the fact finder in this case, was free to discount all or any part of Appellant's testimony. *See Edwards v. State*, 178 S.W.3d 139, 144 (Tex.App.--Houston [1st Dist.] 2005, no pet.). The evidence that Appellant was aware that the package contained an illegal substance included: his inquiry into UPS shipping procedures the week before; his request for tracking information from Ms. Rojas; his fearful demeanor after shipping the package; the evidence that David did not join Appellant in the store when he shipped the package; the evidence that Appellant broke UPS policy by handling the package himself when he was off duty; and Appellant's placement of the package in the "high-value" package cage when it was not designated as "high-value." Viewed in the light most favorable to the verdict, we conclude a rational jury could have determined beyond a reasonable doubt that Appellant was consciously aware that the package contained contraband. Accordingly, the evidence was legally sufficient to support the jury's verdict, and Issue One is overruled.

Having overruled both of Appellant's issues, we affirm the trial court's judgment.

May 25, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)